## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **Case No.:1:07-CR-259** |
| ) | **Honorable Richard J. Leon** |
| LEONARD YOUNG ) | |
| ) | |
| Defendant. ) | |
| _____) | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

COMES NOW, Defendant Leonard Young, by and through his attorney's Stephen J. Williams, Esquire, Denise L. Bellamy, Esquire and Williams Worthy, LLP respectfully submit the herein Memorandum in Aid of Sentencing for the above-captioned matter. Sentencing is scheduled for April 24, 2008.

### INTRODUCTION

On October 30, 2007, Mr. Young pleaded guilty to Health Care Fraud and Causing an Act to be Done, 18 U.S.C. § 1347 and 2. He was released on his own personal recognizance and place on pretrial supervision. The advisory guidelines range for this offense is 18-14 months, Zone D, which includes a 3-point reduction for his acceptance of responsibility and assistance to the authorities in ongoing investigations. A Presentence Investigation Report was completed on January 17, 2008 and revised on March 28, 2008 ("PSR").[1] On March 17, 2008, the Government submitted its Memorandum in Aid of Sentencing ("Gov't Mem."). By order of this Court, Mr. Young submits the herein Memorandum, outlining factors, pursuant to 18 U.S.C § 3553(a), that the Court should consider in imposing a sentence.

---

[1] The Presentence Investigation Report that will be referenced throughout this Memorandum will be the one dated March 28, 2008.

## FACTUAL BACKGROUND

In 1997, Mr. Young started and incorporated his own business, Young Star Tours. (PSR at 8.) In 2002, he signed a contract with Medicaid to provide transportation services with Medicaid. (PSR at 4.) The contract required Mr. Young to provide needy Medicaid recipients with transportation to and from their required medical appointments. (Gov't Mem. at 2.) The record unequivocally shows that Mr. Young began billing Medicaid and receiving compensation for transportation services that were never provided. Mr. Young received misinformation from the DC Department of Public Health which precipitated the commencement of the offense at hand. (Dorise C. Young Ltr., Ex. A.) Mr. Young's billing practice continued for approximately three and one-half years until a post-payment review was conducted on some of the claims for payment submitted by Mr. Young. (PSR at 4.) It was then discovered that Mr. Young had accepted compensation in the amount of $211,441.50 for services he did not provide. (Id.)

## DISCUSSION

In the plea agreement, Mr. Young and the Government agreed to an advisory sentencing calculation within the sentencing guidelines range of 18 to 24 months that included a three-point reduction for acceptance of responsibility and assistance with investigations. However, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence. See United States v. Dorcely, 454 F.3d 366, 374 (D.C. Cir. 2006). The sentence must be adequate "but not greater than necessary" to comply with the relevant purposes and factors set forth in the statute. 18 U.S.C. § 3553(a). The factors most relevant to this case are the seriousness of the offense, the nature and circumstances of the Offense, the need to promote respect for the law, the

need to afford adequate deterrence to criminal conduct, the need to protect the public, the history and characteristics of Mr. Young and the need to provide just punishment. These factors set forth and outlined below will demonstrate that incarcerating Mr. Young beyond the bottom of the guideline range would serve no useful purpose as the Government's interest in appropriate sanctions and deterrence would be sufficiently met. Notwithstanding, however, the Court should also consider that the guidelines are *advisory* and that the Court is not bound by the parties' plea agreement or the Federal Sentencing Guidelines. Federal Rules of Criminal Procedure 11(c)(1)(B) and 11(c)(3)(B).

### A.  Seriousness of the Offense - § 3553(a)(2)(A).

Mr. Young does not dispute that billing Medicaid for services he did render which resulted in a gratuitous gain of $211,441.50 must be deemed a serious offense. He fully understands that the Medicaid program provides health insurance for low-income recipients and that he should not have benefited in any way for what others do not have. Mr. Young, however, has fully accepted responsibility for the offense conduct and appreciates the consequences of exercising wrong judgment. In considering the seriousness of the offense, what becomes most debilitating for Mr. Young in the end is the amount of money that Medicaid was deprived of, which ultimately drove the guidelines range up. While $211,441.50 is by no means a nominal amount, Mr. Young would like the Court to take notice that he *lawfully* earned well over $400,000.00 during the tenure of the offense and did not rely on the fruits of his offense as his sole means of income. (PSR at 4.) The record does not indicate that he hid the money or squandered it away nor does it show that Mr. Young did not file federal and state taxes on the money when in fact he did.

### 2.  Nature and Circumstances of the Offense - § 3553(a)(1)

The nature and circumstances of the offense not only point in a mitigating direction but indicate that the offense did not involve premeditated or calculated deliberations on his part. Simply put, Mr. Young billed Medicaid for services not provided. Mr. Young received misinformation from the DC Department of Public Health which triggered the commencement of the offense at hand. . (Dorise C. Young Ltr., Ex. A.) His client load was unilaterally (and without prior notice) cut by almost two-thirds by the Department of Public Health.[2] Mr. Young was not prepared for this. As a result of this unexpected decrease in income, Mr. Young foresaw that he could not provide for his family, which created financial and emotional pressures for him. There was no plan or scheme, conspiratous discussions with other services providers, or the illusion that this would be a "get-rich-quick" scheme. Based on the record, it is unfortunate but quite evident that there were and still are glitches in the Medicaid system that allowed Mr. Young, and most likely others, to engage in this billing practice for three and one-half years before his practice was discovered. Mr. Young's actions are more analogous to bad judgment rather than criminal intent. While these facts do not excuse Mr. Young's misconduct, it does bear directly on the issue of punishment and can be considered by this Court as mitigating factors.

### 3.  Need to Promote Respect for the Law - § 3553(a)(2)(A)

We submit that Mr. Young's conviction, his loss of income and future earning capacity, the restraint on his freedom that *any* sentence will impose, and the financial penalties that he may incur in restitution, fines, or any combination thereof, are sufficient to meet this requirement of this statute.

---

[2] Mr. Young looks forward to the opportunity at Sentencing to specifically address in more detail.

**4. Need to Afford Adequate Deterrence to Criminal Conduct - § 3553(a)(2)(B)**

Nothing in the record suggests that a sentence of imprisonment greater than 18 months is necessary to deter Mr. Young from committing a crime of this nature or any other crime. From the onset, Mr. Young's home that he shares with his wife was raided by the Government; his personal effects were confiscated; his financial resources were exhausted to retain defense counsel; the money in his bank account was seized and forfeited; his ability to obtain contracts to provide transportation services has been barred by District of Columbia Government. Mr. Young has been on pretrial supervision for almost 6 months and now, before this Court, he faces 18 to 24 months for his misconduct. Although Mr. Young has the much needed support of his family and friends who respect and admire him, the mere embarrassment and humiliation of explaining to them the nature his wrongdoing is most significant. At the age of 56, faced with his first and only criminal charge and conviction, Mr. Young does not wish to revisit any of the occurrences that have taken place over the last 6 months. He will carry this conviction for the rest of his life. These facts alone surely constitute adequate deterrence to any future criminal conduct committed by Mr.Young. Additionally, he is not at risk to recidivate.

**5. Need to Protect the Public - §3553(a)(2)(c)**

The information stated in the PSR suggests that Mr. Young's conduct, within the context of his life, was a dramatic departure from the norm. Other than traffic violations, Mr. Young has no known juvenile or adult contacts with any state or federal criminal systems. (PSR at 6.) While Mr. Young's acceptance of monies not earned is inexcusable, there is no indication in the record that he specifically intended to defraud innocent people or that the services he did provide were anything but professional and reliable.

There are no allegations that he provided substandard services to the patients and in fact, there are individuals who still seek his services. (Keith Jones Ltr., Ex. D.) All indications are that a sentence of incarceration beyond 18 months is unnecessary to protect the public.

**6. History and Characteristics of the Defendant. §3553(a)(1)**

Mr. Young is 56 years old and has been married to his wife, Dorise, for eighteen years. Dorise indicates that he is a devoted husband and father and truly an asset to the community. (Dorise C. Young Ltr, Ex. 1.) Mr. Young owns his home with Dorise which they purchased in1995, 10 years prior to the offense. There is a balance on the mortgage in the amount of $232,000. (PSR at 10.) The record shows that this is the only piece of real property that he owns.

Mr. Young does not have juvenile of adult criminal record nor does the record reflect that his family engaged in criminal conduct.

Mr. Young would like this Court to take note that there is nothing in the record that reflects that Mr. Young's lifestyle became one of luxury and lavishness as a result of receiving unearned monies. The PSR indicates that he has a little over $5,000 in personal bank accounts. He household obligations are typical and not extraordinary; mortgage, car insurance, utility bills, etc. (PSR at 8-9.) Mr. Young owns a few vehicles in which all, with the exception of the 2001 Durango, are well over 10 years old. (Id. at 9.)

At the age of 56, Mr. Young has no adult history of illicit drug use and tested negative on December 4, 2007 for illicit substances. (PSR at 8.)

Mr. Young's employment record shows a history of working with people and serving others. He enlisted in the United States Navy in 1974 and received an honorable

discharge in 1975 due to diagnosed medical condition. (Id.) Prior to owning and operating his transportation company for almost ten years, he was a correctional officer with the DC Department of Corrections during the 1980's. (Id.) As mentioned above, although not detailed in the record, Mr. Young paid federal and state taxes, including the money that was deprived from Medicaid.

It is evident from the letters of support submitted herein on Mr. Young's behalf, that he touched the lives of many around him. Despite this offense, his family and friends did not change their opinion of him. The letters stress that he was a good father, good friend, compassionate, dependable and respectful. One would even go as far as to call him "my brother". (Agnes L. Savoy Ltr., Ex. B.) The customer service that he provided to his customers were of "quality" and with a "very high level of expertise". (Keith Jones Ltr., Ex. D.) He was required to work with people on a daily basis and his personality made him an exceptional business man. (Id.) Mr. Young was dependable and always carried himself in a professional manner. (Keith Jones Ltr., Ex.D; Juliet Reid Ltr., Ex. E; James Pettus Ltr., Ex. F.) When Mr. Young was not working he would provide transportation services to family and friends, at no charge, on his own personal time. (Dorise C. Young Ltr., Ex. A; Agnes L. Savoy Ltr., Ex. B.) Every year, Mr. Young would purchase gifts for all of his clients because he knew some of them would not receive any other gifts. (Dorise C. Young Ltr., Ex. A.) The PSR writer as well, reported that Mr. Young is polite and cooperative. (PSR at 7.)

**7. Need to Provide Just Punishment §3553(a)(2)(A)**

Mr. Young has made efforts to make amends for his wrongdoing. As detailed in the PSR, Mr. Young not only demonstrated an acceptance of responsibility but assisted

authorities in the investigation by timely notifying authorities of his intent to enter a plea, resulting in a 3-point reduction of the offense level. (PSR at 5; Gov't Mem. at 3.) Mr. Young agreed and executed a Consent Order of Forfeiture in the amount of $37,950.00, which constituted almost 20 percent of the amount deprived as payment towards restitution. (Gov't Mem. at 3.) Additionally, on March 11, 2008, Mr. Young willingly participated in a meeting with the Federal Bureau of Investigations. The FBI's purpose for the meeting was to assist with their on-going investigation and to help them identify preventive measures that that could be taken by Medicaid.

Additionally, if the Court orders Mr. Young to pay a fine, he asks the Court to consider several factors in deciding the amount of such fine. Pursuant to 18 U.S.C. § 3571(d), the maximum fine in this matter is $422,883.00. (PSR at 12.) On July 27, 2007, the Office of Investigations and Compliance of the Medical Assistance Administration for the District of Columbia notified Mr. Young that they are withholding payments based on information that he was billing for services not rendered. (Office of Investigations and Compliance Ltr., Ex. G.)[3] On or about February 6, 2008, as a result of Mr. Young's guilty plea, the Office of Contracting and Procurement for the Government of the District of Columbia notified Mr. Young that they proposed he and his company be barred from consideration of awards of District of Columbia contracts and subcontracts. (Office of Contracting and Procurement Ltr., Ex. H.) As a result, Mr. Young not only stopped receiving lawful earnings on July 27, 2007 for the services he *did* provide, he will inevitably be precluded from future earnings in the manner in which he was doing so for the past 5 years.  This was Mr. Young's sole source of income and only means in

---

[3] Despite this notice from Medical Assistance Administration, Mr. Young somehow still continued to receive requests from Medical Assistance Administration for services. He did not accept any further requests for services.

earning his living and is in position to pay a fine of that amount. Additionally, Mr. Young retained a defense attorney for this matter and as a result, has incurred significant legal expenses. (PSR at 10.)

In light of these facts, along with the conclusion made by the PSR writer that Mr. Young does not have the means to satisfy a fine, a just punishment should not include a fine or a sentence that exceeds 18 months.

**B.  Federal Sentencing Guidelines are Advisory**

Although the 3553(a) factors discussed above may argue for a sentence at the lowest end of the guideline range, the guidelines are merely advisory. See <u>United States v. Booker</u>, 2005 LEXIS 628 (Jan. 12, 2005).  "A district court's job is not to impose a 'reasonable' sentence. Rather, a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2)." <u>United States v. Foreman</u>, 436 F.3d 638 n.1(6th Cir. 2006).

Furthermore, the Court is not bound by the plea agreement and can consider any guidelines adjustments, departures or calculations different from any stipulations in the agreement or contemplate a sentence outside the guidelines range based upon the general sentencing factors listed in Title 18, United States Code, Section 3553(a). The Court is also not bound by the non-mandatory Federal Sentencing Guidelines. (Gov't Mem. at 3.)

Given the application of <u>Foreman</u>, and the 3553(a) factors, Mr. Young requests that the Court exercise its discretion when imposing a sentence.

## CONCLUSION

For the foregoing reasons, Defendant Leonard Young respectfully requests that the Court exercise its discretion when imposing Mr. Young's sentence and/or in the

alternative that Mr. Young be sentenced to a period of incarceration not to exceed 18 months.

Respectfully Submitted,

**WILLIAMS WORTHY, LLC**

_/s/_____
Stephen J. Williams #453260
Denise L. Bellamy #MD16993
5400 Kenilworth Avenue
Riverdale, MD  20737
(301) 887-9000
_Attorneys for Defendant_
_Leonard Young_

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 17th day of April 2008, a copy of Defendant's

Memorandum in Aid of Sentencing was electronically filed with notice and copies to:

      Virginia Cheatham, Esquire
      Assistant United States Attorney
      555 Fourth St., N.W.
      Washington, DC 20530

                      */s/*_____
                      STEPHEN J. WILLIAMS

January 6, 2008

To Whom It May Concern:

I have had the distinct pleasure of being married to Leonard Young for eighteen years. He has always been a kind, respectful and generous man. He is a man who is always willing to help others in any way he possibly can. He always gives 100% of himself toward his job and his family. Leonard was instrumental in helping me raises my Daughters and my Grandsons. They have the utmost respect and admiration for him. He encourage my oldest Grandson to join the Job Core to keep him off the streets and out of trouble.

In 2005, I had been experiencing pain in my left knee. Surgery was advised hoping that the knee would get better. After the surgery the Doctor informed me that ortharitis were my problem and that I would always have problems with it. There are nights I cannot sleep and days I cannot go to work and perform my duties because the pain is unbearable. My job requires me to be able to stand or walk eight hours per day. There have been days when I have had trouble getting out of my car after the drive home from work. In 2006, I sustained and injury on the job I was diagnosed with a pinched nerve. I received treatment but I am still experiencing pain occasionally. I do not have enough time to retire, therefore when I am unable to work, I depend on my husband for comfort and support.

In 2006, one of my coworkers was diagnosed with Cancer. Approxiametley twenty of us decided to have a surprise Birthday/Retirement Party for her. The group wanted to know if my husband would provide the transportation so that we all could arrive at the same time, and that they would be willing to pay for the gas. I explained the situation to Leonard and asked if he would provide the Transportation. He stated that this was a nice thing that we were doing and he would be glad to drive us to Sterling, Va. My husband drove the group to Virginia and did not charge them for the gas.

Every year at Christmas he would purchase gifts for all his clients because for some this was the only present that they may receive. He collected clothing for his Female Clients because some of them did not have proper winter clothing.

Leonard is a devoted Husband and Father and truly and asset to the community.

Sincerely,

Dorise C. Young

EXHIBIT A

To Whom It May Concern

This letter is to confirm that I, Agnes Savoy, have known Mr. Leonard Young for over 15 years, or more Mr. Young has been a good friend. His is always willing to lend a helping hand to others. I know him to be a man of principles and good judgment.

When ever I had to be transported anywhere to the airport, doctors and as much as to the store no matter what time of the day or night, he would always say I can take you, are you ready now. He was always on time. I don't think I could find a nicer person then that. My bus trips he would always be a host for me, I didn't had to ask him, just pitch in and start working. Mr. Young has always been a dedicated helper.

Mr. Young a excellent father and not just to his children. He has been very support on his step-children as well. I would go as far as to say I can call him my brother.

Sincerely,

Agnes L. Savoy
PO Box 189
Aquasco, Maryland 20608

P.S. Feel free to contact me if in need (202) 586-0303

EXHIBIT B

To whom it May Concern,

It gives me pleasure to write this letter regarding Mr. Leonard Young. I have known Mr. Young for approximately ten to twelve years, both in a professional and personal Manner.

Mr. Young has always displayed a sense of concern and interest in the development and progress of all people that he has had the opportunity to interact with.

On a personal level I have observed Mr. Young in his role of an interested Gentleman who has a lot of respect for his fellowman. He said to me, and I agree, that "Respect for one Another's culture is the guiding principle for a truly remarkable society." He believes in this statement simply because we are a Diverse society a Diverse Culture, He believes in America who is simply a "melting Pot" to include those of all Nationalities.

Mr. Young has an eye for business and a nose for success.

EXHIBIT C

He has proved to be a devoted father, husband and truely a pillar of strength in the Community.

Mr. Young is a compasionate, caring and giving person. He will go the extra mile for anyone who is in need of his help and support.

He will do well in any venture, if afforded the opportunity.

He gives before he considers receiving.

Again, thanks for giving me the opportunity and pleasure of writing about a man who thinks of others before he thinks of himself.

Thanks again

Dr. Milton E. White Jr.
Phd, Edd, Eds
Director of Projects
The District Gov't
1105 15th St N W
Washington, D. C. 2005

**Custom Tours of Washington, Inc**
**11200 Lenox Drive – Upper Marlboro, MD  20773**
**(301) 350-3172**

January 9, 2008

To Whom it May Concern,

I am writing this Letter of Reference for Leonard H. Young, owner and operator of Young Star Tours.

I have known Mr. Young since 1996. As the owner and operator of Custom Tours of Washington, Inc., I have had the great pleasure of working with Mr. Young for 11 years. Over the years, I have worked side by side with Mr. Young and he has worked for me on many different types of contracts. For as long as I have known Leonard, he has always carried himself in a professional manner. He is a very dependable and hard worker and he has never let me down. I have customers to this day that ask for his serves. Mr. Young's personality and his desire to do the best job he can is why I know that when I give him a job to complete, it is handled in a professional manner. Mr. Young has not only been a great asset to my company, but to the people in the Washington DC metropolitan area. Mr. Young has provided a quality service to the Washington DC area and is regarded with a very high level of expertise and reliability. Mr. Young's professionalism and hard work is greatly appreciated by me and my customers.

The tour business is a difficult job; you are required to work with people on a daily basis, 7 days of week. Mr. Young's personality has made him an exceptional business man and a very good friend.

Sincerely,

*Keith Jones*

Keith Jones
President/Owner
Customer Tour of Washington, Inc.

EXHIBIT D

January 8, 2008


To Whom It May Concern:


I have had the pleasure and privilege of knowing Leonard Young for the pass eight years.
During this time, my family and I have always treasured his friendship. A man of his
word, he has never hesitated to lend a helping hand, and has always demonstrated
honesty, dedication and commitment in whatever endeavor he has been involved with.
Knowing Leonard, I have never known him not to be a dependable, reliable, and a hard
working person, he is truly a inspiration for everyone that comes in contact with him.
If there are any questions, please feel free to contact me at (301) 885-3292.



Sincerely,

Juliet Reid



EXHIBIT E

January 8, 2008

To Whom It May Concern:


I have had the pleasure of knowing Mr. Leonard Young for six years. Mr Young presents himself in an enthusiastic and professional manner. After spending time with him you realize that he is adamant about his job. He is dependable, respectful and posses a strong sensitive personality. He is always willing to help others on the job and in the community. He is an inspiration to everyone he comes in contact with.


James Pettus
13103 Pettus Court
Upper Marlboro, Maryland 20774

EXHIBIT F

# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## Department of Health
### Medical Assistance Administration



**Office of Investigations and Compliance**

July 27, 2007

Mr. Leonard H. Young
Young Star Tours (026788700 & 036224200)
7003 Tarquin Avenue
Temple Hills, MD 20748

Provider 026788700 & 036224200

Dear Mr. Young:

Please be advised, you are hereby notified that the Department of Health, Medical Assistance Administration has withheld payments to Young Star Tours, Provider Numbers 02678870 and 036224200, effective July 20, 2007. This action is being taken in accordance with the Department's policies and procedures manual and, the Code of Federal Regulations, Title 42, part 455, section 23(a) which provides, in relevant part that, "the State Medicaid agency may withhold Medicaid payments, in whole or in part, to a provider upon receipt of reliable evidence that the circumstances giving rise to the need for a withholding of payments which involve fraud or willful misrepresentation under the Medicaid program. The State Medicaid agency may withhold payments without first notifying the provider of its intention to withhold such payments."

Payments are being withheld based on reliable information from the United States Department of Health and Human Services, Office of Inspector General, alleging that Young Star Tours billed the DC Medicaid program for services that were not provided in accordance with Departmental policy. This action of withholding payments is for a temporary period until such time as the Department or the prosecuting authorities determine that there is insufficient evidence of fraud, willful misrepresentation or, legal proceedings related to the alleged fraud or willful misrepresentation is completed.

You have the right to submit documentary evidence against withholding the payments for consideration by the Medical Assistance Administration. Send your response to Diallo I. Bennett, Chief, Office of Investigations and Compliance, Medical Assistance Administration, 2100 Martin Luther King, Jr., Avenue, S.E., Suite 310, Washington, D.C. 20020.

Sincerely,

Diallo I. Bennett, Chief
Office of Investigations and Compliance

DIB: ljj

Fraud and Abuse Hotline: 1-877-632-2873

---

2100 Martin Luther King, Jr. Avenue, SE, Washington, D.C. 20020   (202) 698-2074 Fax (202) 727-5708

EXHIBIT G

GOVERNMENT OF THE DISTRICT OF COLUMBIA
OFFICE OF CONTRACTING AND PROCUREMENT



## CERTIFIED MAIL-RETURN RECEIPT REQUESTED

FEB  **6** 2008

Young Transportation, Inc.
7003 Tarquin Avenue
Temple Hills MD 20748
Attn: Leonard H. Young

Re: Notice of Proposed Debarment Action

Dear Mr. Young:

For the reasons set forth below, the Debarment and Suspension Panel ("Panel"), is proposing that
Young Transportation, Inc. ("YTI") be debarred from consideration for award of District of
Columbia ("D.C.") contracts and subcontracts.

On September 27, 2007, Leonard H. Young ("Young"), the owner of YTI and Young Star Tours
("YST"), signed a plea agreement with the U.S. Attorney for the District of Columbia. Specifically,
Young pled guilty to a one count information charging a violation of 18 U.S.C. § 1347 (health care
fraud).

At least from January 2003 to August 2007, Young, as a Medicaid provider, billed Medicaid for
transportation services purportedly provided to Medicaid recipients. In response to these claims,
Medicaid paid Young, YTI or YST with checks sent to Young's home. Young endorsed the checks
and deposited most of them into YTI's or YST's bank account, accounts on which Young had
signature authority.

The D.C. Department of Health, Medical Assistance Administration conducted an investigation which
revealed that Young, YTI or YST billed Medicaid for approximately 6,600 claims for transportation
services that were not provided. Young, YTI and YST used false claims to fraudulently bill Medicaid
for $211,441.50.

Under D.C. Official Code §2-308.04(b)(1)-(5), a contractor may be debarred from consideration for
award of contracts and subcontracts for: 1) conviction for commission of a criminal offense incident
to obtaining or attempting to obtain a public or private contract, or subcontract, or in the
performance of the contract or subcontract; 2) conviction for fraud, embezzlement, theft, forgery,
bribery, falsification or destruction of records, receiving stolen property, or any other offense
indicating a lack of business integrity which currently affects the contractor's responsibility as a
District government contractor; 3) conviction under antitrust statutes arising out of the submission of
bids or proposals; 4) submitting false claims or making false assertions regarding local, small or

---

One Judiciary Sqaure, 441 4th Street, N.W., Suite 700 South, Washington, D.C. 20001
(202) 727-0252 Fax: (202) 724-5673

EXHIBIT H

disadvantaged business status or eligibility; 4A) a willful violation of contract provisions or failure to perform in accordance with the terms of a contract; or 5) any other cause the Panel determines to be sufficiently serious and compelling to affect responsibility as a contractor.

Even though YTI was not a party to the plea agreement, 27 DCMR 2217.2 provides that the fraudulent, criminal or other seriously improper conduct of any officer, director, shareholder, partner, employee or other individual associated with a contractor may be imputed to the contractor when the conduct occurred in connection with the individual's performance of duties for or on behalf of the contractor, or with the contractor's knowledge, approval or acquiescence. The Panel is proposing YTI's debarment based upon Young's guilty plea to a one count information charging a violation of 18 U.S.C. § 1347 (health care fraud). Specifically, the Panel proposes debarment under D.C. Official Code §2-308.04(b)(1) and (2). Young's guilty plea provides a sufficient indication of YTI's lack of business integrity and is sufficiently serious and compelling as to affect YTI's responsibility as a D.C. government contractor.

This letter serves as notice of the proposed debarment action against YTI. As of the date of this notice, the District of Columbia will not solicit offers from, award contracts to, renew or otherwise extend contracts with, or consent to subcontracts with YTI pending a final debarment decision.

Within fifteen (15) days after receipt of this notice, YTI must submit to the Panel, in person, in writing, or through a representative, information addressing the aforementioned issues raised regarding this matter. In addition, YTI may submit any additional specific information that raises a genuine issue of material fact. If we do not receive a response from YTI within the fifteen-day period, the Panel will make a final decision whether to debar YTI on the basis of the available information in the Panel's possession. Attached you will find a copy of the applicable D.C. regulations articulating the procedures governing debarment.

Information submitted to address the issues raised herein should be sent directly to: David P. Gragan, Chairman of the Debarment and Suspension Panel, 441 Fourth Street, NW, Suite 700S, Washington DC 20001. Should YTI desire to submit or present YTI's information in person, please contact Mr. Gragan at 202-727-0252, within the fifteen-day period, to schedule a meeting with the Panel.

Sincerely,

David P. Gragan
Chairman
Debarment and Suspension Panel

Attachments

cc: Nancy Hapeman, General Counsel, OCP
    Kimberly Matthews-Johnson, General Litigation I, OAG

2